Good morning. Maurice Baskin for Petitioner CEMEX and I'd like to reserve three minutes for rebuttal. That's sort of an unusual argument set up. Yes. Triangular method. But we're here today. Yes, we're here today because the National Labor Relations Board improperly applied and then rejected altogether the Supreme Court's seminal Gissel case cited from 55 years ago. It's been applied by this circuit and all of the other circuits to hold that the board is not supposed to issue a bargaining order after an election where a majority of the employees have voted not to be represented. The board is not supposed to issue a bargaining order except as an extreme remedy and even then only if a fair rerun election is unlikely to be possible. Those findings in this case are totally inadequate to to meet that standard but then not satisfied and perhaps sensing that problem with the case the board has created out of whole cloth an entirely new standard for when bargaining can be ordered without the consent of the employees and one chance to discuss that too. We have all kinds of issues floating around in this case including constitutional ones but I'm going to start with those because it's really at the core to this proceeding. So what do I mean when I say they failed to apply it? It really goes to what they did not acknowledge although the administrative law judge did found that it would be unfair labor practices as many as they claim there were were not pervasive they were not widely disseminated and what's critical to understanding that and the board really tries to pass it off as eventful is the extraordinarily spread out bargaining unit over hundreds of miles with individual stations some 25 around California and Nevada and no evidence of very little evidence anyway sparse evidence I think was their word for dissemination of unfair labor practices which they've tried to say well look how many there were they say there were dozens but in fact well over half at 20 at least by my count it depends how you're counting these charges but at least 20 are by low-level supervisors to one or two handful at most employees. Well counsel we're reviewing the board's decision for an abuse of discretion correct? Yes. So and several of the found allegations related to threats that a plan might close and you know and other things that were of a more serious variety why isn't that why aren't those findings enough to support the board's determination that a bargaining order was required in this instance? Sure yes good question and next part of that because once you take out of the equation the 20 plus charges that did not involve. So why don't you answer my question then? What about that? The only evidence they have for that comes from a speech or series of speeches given by the vice president Forgy and when you look closely. From what I understand what they found was that the same speech was given over 20 different locations that it was high-level official many different meetings. Right. So that that doesn't seem like small dissemination that seems pretty widespread doesn't it? Not but with the understanding that there was at those same meetings and surrounding the meetings they were giving out the board's own handbook guidance on on what is allowed and what is not allowed in elections. They give slideshow that was accurately depicting material. My bottom line is that those allegations coming from the speech speeches they were not unfair labor practices in the first place they were not threats of plant closings in the second place. Particularly I would point you to the dissents footnotes 34 and 39 I believe it covers them. When he's talking about his own experience which he was and certain things for example about strikes and in his experience there was a seniority basis to it. Well the law is pretty clear when you're talking about your own experience that's factual. It's free speech. Its employers have these speech rights also. It's not a threat. It's not a threat to say and particularly how technical the distinction between permanent and temporary replacements is surrounded by letters and slides putting it in the right context. These were not the kind of severe plant closing threats that people have enforced in the past and I would point you to the Chatfield decision of this of this court in which it talked about there were statements that might result in plant closure, layoffs, loss or a plan raises and bonuses, harsher working conditions and they said yes set aside the election have a rerun but no to a bargaining order. Do you have a case that says if a threat of plant closure is accompanied by same speech or written materials that are compliant with the law that that mitigates the threat? That it mitigates? Yes there is actually the Western drug I think it covers that as well as I think the Chatfield case which I was just looking at it it also talks about the difference between low-level and high-level management and statements to counter or give greater context to a statement. No one's alleging here that he said we are going to close this plant if if you bring in the Union. It never came close to that and I've seen there are cases out there where that's what management says. Didn't say that here. In the interest of time do you can you move to the new standard? Lots of thoughts about that. Go ahead. So we have something here where I think everyone would agree the Supreme Court has the final say on what the law is. There's no deference given to the board on what the law is. There's no right of the board or frankly this court to depart from what the Supreme Court has held and Gissell is is the law but that hasn't stopped the board from doing something frankly. Do you read Gissell to say that the board does not have the authority to change course from prior practice of Gissell affirmed in other words? Gissell does not there are situations where that is the case. That is not the way that Gissell opinion is worded. In fact the Gissell opinion rejected the board's notions of how to enforce and what the standard should be. The Supreme Court imposed its own standard so there's no question and it's the standard the board has been trying to avoid that standard for years. There are many many cases in which bargaining orders have been denied by the court. Your view of Gissell is that the Supreme Court directed the policy of the board and that the board cannot deviate from the Gissell policy forevermore? Yes that is our position that until the Supreme Court not forevermore that depends on what the Supreme Court says in the future but that is the law. The Supreme you know Congress who is making the law in this country? Congress wrote the law. The Supreme Court interprets the law and has now reinforced that against administrative agencies. There's no more Chevron deference. In one particular where in Gissell would you point us to the thought that rather than the Gissell affirming what the board had done that it's directing a certain type of policy but what part of Gissell are you relying upon for that process? The pages that are always quoted I think it's 602 to 606 so for the pages that are quoted in this in the Chatfield decision so and it's 618 I'm sorry it's at 618 you know it's 395 US at 618 and much of the let's just say that every one of the cases that are cited by both parties in this brief make address it as the law. They don't say that there's something that's going to revolve about it and they're always dealing with situations where the board is saying well you know we think we've done it our way and if that way is is better but never have we seen the board come out and say and even the board doesn't premise it on the notion that Gissell is not mandatory for it they say well it's only mandatory for this type of claim but we are creating an alternative universe well an alternative standard but it might as well be an alternative universe because it's trying to claim that. Let me ask you this because the board has had different alternative standards come up over time Joyce Silk, Lyndon Lumber, Gissell, now the SEMIC standard for better or worse the new standard. Why and the Supreme Court has affirmed those changes in standards before so what makes this Gissell affirmance different than the prior Supreme Court decisions that it would suggest that it's locking in what the board has chosen as the available remedy and only that? Because it's not it was not an outright affirmance of the board it rejected the board's standard the board wanted to say at that time and so in the opinion the board wanted to say if it was enough to set aside the election that was enough and therefore you could issue a bargaining order based on that which is exactly what they're trying to put in now without any authority whatsoever. Supreme Court said no you can't there are certain things that are not sufficient certain unfair labor practices are not sufficient to have a bargaining order. That did not come from the board that came from the Supreme Court and until the Supreme Court changes it the board had no right to do what it's done with this so-called alternate standard to say nothing of Lyndon Lumber and what Lyndon Lumber had to say the Supreme Court about what Congress authorized and it said there's no evidence that Congress ever believed that employers would have to file the first petition which is what they've established now under this new standard although how it applies here is beyond us. With respect to Lyndon Lumber the the court was responding to the DC Circuit's decision saying that the act required the board to require employers to file a petition essentially that the board did not have discretion to do anything else and my understanding of the Supreme Court's decision is that it was a discretionary decision by the board. Why do you read Lyndon Lumber differently given the procedural posture? Lyndon Lumber is a little more arguable than Gissel. Gissel is outright rejection but Lyndon Lumber the reason we're arguing that what they rejected was the interpretation of what Congress had to say and they rejected the board's they rejected the DC Circuit and the board in this case is relying on the dissenting opinions in Lyndon Lumber so I think that Lyndon Lumber is still falling in the same boat but in particularly because of the interpretation keeping in mind that this was at an earlier time when the board was given greater deference in terms of interpreting the statute. Now under Loper v. Bright that's the biggest a sea change it's acknowledged as such Chevron deference sections of Loper Bright where the court said there's a series of cases where we upheld properly that a statute gives an agency broad discretion and you know they have the authority to fill in essentially fill in the gaps of the statutory scheme they cited cases interpreting the NLRA it's branching the board that type of authorities why do you argue that that line of cases is inconsistent with Loper Bright? Well because they don't give any authority for this case this case is unprecedented so it can't claim any deference from the olden days or some previous decision they came up with a new standards entitled to no deference whatsoever that's my simple answer to that question I've reserved three minutes for rebuttal. You may have three minutes. Thank you. Good morning and may it please the court I'm Karen Sensor from Weinberg, Rothschild & Rosenfeld with me at the council table is Matthew Earle we're representing the teamsters here. From the questions that were just asked I guess I should start straight on the semex remedy I'll start there I don't see any inconsistency when it comes to either Gissel or Linden Lumber. Linden Lumber addressed a completely different question that was reserved in Gissel. Linden Lumber addressed the situation of a bargaining order where there weren't underlying ULPs where the employer did not create an atmosphere where employees could not have a free choice to vote so Linden Lumber I don't think is truly in play when we're looking at the question here where we have over 20 over 24 ULPs that were found putting aside the ones that we think should have additionally been found. Gissel also doesn't tell us that it's exclusive it gives the framework of when a bargaining order can issue but doesn't say it's the only time that a bargaining order can issue. I just want to make sure I understand your argument there because the board's semex framework would address the other situation in which no ULPs were committed but the employer simply did nothing right and didn't file petition for an election and the board's new standard says you know it is they're putting the essentially burden on the employer who wants to insist on an election after being given a demand for bargaining and a claim that the union represents the majority of employees that if the employer does nothing they will be subject potentially to a ULP charge so are you arguing that that issue since it's just not presented those facts aren't presented here we don't need to rule on the legality of that portion of the framework? Well those facts are not here but independently the action of doing nothing is in fact doing something. When the demand has been made for recognition that is sufficient to create the bargaining obligation because the act in the clear text indicates that more there are ways to representation other than a NLRB election and those include a card check majority which is concentrated in Gitzel and a whole line of cases that follow thereafter. The employers action of refusing to recognize the card check majority is in itself the ULP that leads to the bargaining order when the employer chooses not to engage in the RM process. That was not the law prior to this decision is that correct? I would be hard pressed to say that it was the general... It's clearly not the law. The way that it would be dealt with in that situation would be that the union would file the petition because the employer did not grant the voluntary recognition upon the card check but the board has an extraordinary amount of control over what the remedies are going to be. We go back to the argument that counsel was previously making on Loper Bright. 106C tells us that the board has the right to choose whatever remedy it thinks is appropriate. Well wait a minute. You know this discretion is not nearly as unbounded as you were suggesting and in fact the rule that you seem to reluctantly acknowledge has been changed as a rule that was in place for over 50 years. So the notion that ah this is just something the board can make up as it's going along is not a notion that's likely to survive very long. I don't think it's a notion that they can just change it as they're going along but time and time again the courts both this court and the Supreme Court have referenced that the board is in the best decision to determine how to remedy unfair practices because they are seeing it day in and day out that they're making those decisions based on those circumstances. Let me focus attention in particular and this is actually going to go to the general counsel's office as well but a lot of material here so I don't pretend to have my arms around all of it. This this case has been a challenge but there's a particular statement in the board's decision and for what it's worth it's on pages 15 and 16 of the printed version I'm looking at. We accordingly and there's talking here about the board's decision to impose a different remedy than that had been imposed by the ALJ. We accordingly agree with the judge that the whole record of this case clearly supports concluding that the possibility of erasing the effects of the respondents highly coercive misconduct and ensuring the fair rerun election by the use of the board's traditional remedies is slight end quote and slight is an award that's picked up by accident that's the word that's used in Gissel. Where in the ALJ's decision does the ALJ make such a decision? I can't find it. It seems inconsistent with the remedy that the ALJ has proposed. Well the board is entitled to determine. No no no this statement says we agree with the judge so they're starting off the explanation by saying we agree with them and I don't see the judge ever making anything resembling that kind of statement so my focused question is where did the ALJ offer up this premise is what the judge or the board appears to define as the starting point? Well I think that the ALJ did find that but for the question of dissemination that he otherwise thought that a bargaining order would be appropriate which inherently... That's not answering the question. Did he ever say anything that suggested that the prospects of a rerun election being fair or slight which is the standard Gissel adopts and the board apparently recognizes. I don't get it. I don't see it. Where is it? I don't think that the ALJ specifically used those words but it's long-standing precedent that... What was the ALJ's conclusion? To order a bargaining issue, a bargaining order or to suggest that with these remedies you could have a new election that would be fair? That was the ALJ's belief that with these additional enhanced remedies that there could be a fair election but the board is entitled to and has long been entitled to change the remedies relying on the same underlying facts without questioning the credibility and other factual determinations of the ALJ. Except its explanation here starts with the premise that the judge found the prospect of a fair election was slight and the judge didn't find that. So how am I supposed to decide that what the board did in changing the remedy was reliable or something other than arbitrary and capricious when the very starting point offered up in the decision doesn't exist in the ALJ's decision? Now maybe the Federal Council can point me to something so like I say there's a lot of material here but I looked hard and couldn't find it and it causes me to wonder well what does the board think it was operating on if its premise, if its starting point is demonstrably false? What's the reason for changing the remedy? You told me they've got the power to do it but they got to have an explanation and if their explanation starts with something that's not true, it doesn't seem like a very persuasive explanation. I think that their explanation goes to a broader base and particularly to the facts of this case. Okay so let's go to it. Identify to me what explanation they offer. I found two. Well I think that the explanation that they have provided is that we have a series of unfair practices that start from the beginning of the campaign, travel all the way through including after the campaign has ended, including high-level officials and low-level officials, two separate lines of cases saying which ones of those are most likely to remain in place and concerning for employees. Many of these being hallmark violations in over such a period of time that it is unlikely that anyone will forget them anytime soon. And what are they based that purported finding on because the ALJ didn't reach the same finding and he's the one that talked about the so-called hallmark violations. Well I actually think that that might be the reason why we're looking at a SEMEX as a alternative to in addition to a GISL is because the way that... That's another world of problems because basically what you're offering up and what the board seems to have offered up is we think we've got the authority here to issue a bargaining order but in case we don't we're going to change the rules which is not a statement that offers support for either half of the equation. It suggests that maybe they really didn't have enough here to justify the issuance of the bargaining orders and so they got to change the rules to get to the result they're looking for. I read it the other way. I read it as we have enough under GISL but we think that the GISL standard has become... Except when I asked you what they had under GISL after a brief comment with regard to hallmark and I said that's what the ALJ talked about and he got a different remedy. You switched to plan B. Well we've changed the rules so they can do it under the changed rules which is the problem I'm now trying to identify because if you can't do it under the established standard and you have to change the rules to get the result you want, that suggests that maybe the changing of the rules isn't what you're supposed to do in order to get to the result you want and that's the problem I pose to you. That's what set me straight. But I think that goes overall to the board's ability to adapt and change its approach when it sees that the approach that it's using is not working to remedy the problem. The GISL bargaining order is supposed to address two different things. It's supposed to remedy both the UL P's and it's also intended from the Supreme Court decision to deter future violations. When we see a case like this where the employer is engaged in so many hallmark violations, it's quite clear that the GISL order in and of itself is not deterring an employer from engaging in those types of actions and some other type of weighing is necessary in order to get there but for the most part the GISL, the semi-standard tracks what the GISL standard tells us for the GISL type 2 cases. It simply takes off some of the issues in the back end where they've had the most difficulty in both the courts and the board enunciating how exactly you're supposed to weigh out certain pieces that happen at the end. What the CEMEX order does is clarify that back end on a GISL where we've had so much court back and forth and endless rounds of litigation which of course only favored the employer who's looking for the delay and seeking to not bargain with the employee's representative. Can I ask counsel, suppose the board had said you know we don't think the requirements of GISL have been met but we do think this presents a different circumstance where we want to create this alternative remedial scheme. Would the board be allowed to do that or no? Does the act give it the discretion to decide that even if GISL isn't met it can reach a different remedial structure? I think that they do have the right to do that because I don't think anything in GISL tells us that the GISL order is the exclusive way that we can reach a bargaining order and it wasn't for a long time. The GISL is not the first bargaining order case at the US Supreme Court. Frank Brothers in 1944 is. It does not have any of those standards that came down with GISL and yet creates a valid bargaining order. There's nothing that that disclaims or undercuts Frank Brothers in any of the later decisions. Did that come up in prior cases when the board created new orders? Did it first say whether the pre-existing order was or was not met before adopting a new one? I have not found other cases that really go to creating additional orders. They sometimes don't talk about what kind of order it is and issue a bargaining order but I haven't seen anything that calls anything by a different name such that we have a set of cases that we can work through on that and I apologize I forgot to reserve time in the beginning and then I have I would unless there are further questions right now I'll reserve the rest of my time. Thank you. Good morning may it please the court. Eric Weiss on behalf of the National Labor Relations Board. I guess I'll begin with responding to Judge Sanchez and Judge Clifton some of your line of questionings. First of all it is absolutely the board's position that it can adopt a new framework to justify bargaining orders even if a GISL order were not warranted. It's adopting a new standard that focuses on a very different inquiry and in cases going forward the board has decided that that is a sufficient basis for finding a Section 885 violation and a remedial bargaining order. So even if the court and I'll Let me pick up what you just said. It seems to be clear the board says as much you've said that they didn't need to do it to resolve this case but why not do it through a rulemaking process? Well they did need to do it to resolve this case your honor. The board told me they didn't and the board says it didn't. It had enough authority under the established framework the GISL framework to issue a bargaining order. They said as much and I think you just said as much. Well it's correct. They provided two independent reasons that I concede the result is the same with respect to the the employer's obligations. It's a remedial bargaining order but they're two different bargaining orders. Well they've offered different explanations to get to the same result but they didn't need the second one. The changing of the framework was something they did not necessary to resolve the case. They did it and seems to be much more of a Why not do that through rulemaking? Let me put it into context. These rules have been around since the Lyndon Johnson administration. I may be the only person here that was alive at that point but they're 50, 60 years old. So why not do it in a way that suggests exercise of the board's regulatory authority instead of pulling it out in the middle of a case and applying it retroactively to help justify a decision which the board said it already had the authority to make and did make independently. So why not use the rulemaking process? Sure well setting aside the point that you know it's it's in the it's duplicative but it's independent bargaining orders but to answer your question it's well established that the board has the authority to promulgate these kinds of labor policy standards. That's not the question I asked. Why? They may have authority but the authority is subject to review as being arbitrary and capricious and this one sort of screams out if they're changing a rule that's been in place for over 50 years and it affects a lot of people why do it in a process that's in the context of litigation where it turns out not to have mattered? Well the reason the board did it through adjudication your honor as the board explained in its decision and we explain in our brief is that this inquiry the standard that the board is adopting here is a very fact-specific inquiry. It's not amenable to rigid rules because there are so many variables that come into play some of which have been identified by Amakai and Semex in the briefing that the board is going to need to address as they arise as these unusual circumstances arise. So as it has consistently for the last 90 years the board announced a general framework through adjudication rather than through formal rulemaking and the contours of that rule are going to evolve over time through the adjudicatory process. Well that's what we do I mean we we evolve over time in the case law ruling on statutes and regulations that's the adjudicative process but we don't promulgate the statutes I mean common law has a history where the judges really do set the framework but here the framework is being set by an administrative agency and you just the board describes it as a framework so it's not turning on the facts of this particular case and so I'm just I understand the board has the authority to do it through adjudication but I never figured out why it was they thought it was appropriate to issue a framework applicable generally in the context of this one particular case where it didn't seem to matter. Well because the board was answering a question that was squarely presented by this case which is when you have an employer that has received a request for recognition from a majority union it has refused recognition an election has been scheduled and the employer has engaged in unlawful conduct requiring that election to be set aside well how does the board handle that situation to effectuate the policy of the assets squarely presented here and that's why the board announced a new framework which as it does in many cases will continue on as a board standard and may be applied in future cases but it is directly and applied in this case retroactively even though it applies rules that weren't known at the time well which raises a whole host of retroactivity questions but I don't think they really matter here but it's sure well so I guess my answer the bottom line your honor would be that this case squarely presented the need for this change in law and for this how if they didn't need to adopt the new framework to reach the result how did it squarely present the need to adopt a new framework because they needed to remedy the employer's unlawful conduct and for your own question it just did it said they could do it under existing law you haven't explained to me why they quote need your word not mine to adopt a new framework to resolve this case well respectfully judge Clifton your own questions suggest a skepticism about the gifts order in this case it's not unreasonable for an agency to provide alternative rationales as the Supreme Court and this court have noted in the judicial context if the court provides alternative basis for a decision that's not dicta that's entirely appropriate to provide separate rationales and here the result is the same for the employer but it's essentially two bargaining orders it doesn't make sense to have two bargaining orders in the order but the analysis is very different Gissel looks to is a future election unlikely to be fair that is a very different inquiry and and where is that question answered here I'll go back to the question I posed earlier and tried to alert you do you know of anything in the ALJ's decision that justifies the board's reliance upon the ALJ decision to support the conclusion the prospect of a fair election is quote slight close quote yes your honor and I can point you to a specific passage but also explain the error in the judge's analysis that the board pointed out the judge performed an analysis essentially treating it as a prima facie case where he found a prima facie case for a Gissel bargaining order and then he turns to discussing what he phrased as Do you have a record sake for that? Sure, page 113 of the DNO I'm sorry I don't have the record on appeal site but 113 of the DNO so he I can I can give you the exact quote the judge found here the unlawful discharge he's listing unfair labor practices are certainly severe enough to warrant a bargaining order and that's why the board he's talking about the severity of the violations but under Gissel there are two questions the second question is where the word slight pops up which is whether the prospects of a fair rerun election are slight and the ALJ didn't say that he may have said the violations the first part was severe those are the hallmark violations I made reference to that but I don't see anything that justifies the language of the board's order especially the word slight because that ties in exactly to the other part of the question which is what are the prospects of a fair election in the future since it's been real clear from Supreme Court decisions in Congress that elections are considered the best way to go but I don't see the ALJ saying anything resembling what the board purported to rely upon when it started its explanation for a different remedy well I think can you point me to something I I've got 113 and the problem with that is that as you just said he's talking about the severity of violations he's not talking about the prospects of a fair election in the future and he offered remedies that he presumably thought were going to lead to a fair election in the future and why the board reached a different result I'm still wondering respectfully I don't really think it matters if the board I mean I'm not conceding this but if the board misquoted the ALJ in that one sentence the board provided eight pages justifying a Gissel bargaining order performing its own analysis the ALJ's findings are entitled to no additional deference by the board or this court the board's decision it was is what is controlling so even assuming that the board miscited an exact statement that the ALJ did not include in his decision the board did not rely on a single sentence for a Gissel performed very thorough analysis examining the unfair labor practices explaining why the judge was wrong in the way that he analyzed dissemination focusing on the fact that this was a very close election when it was initially held it was decided by very high turnout it was decided by seven votes I'd also note that they were challenged ballots that the the board did not resolve because they were non-determinative but in theory this may have been a tie election with very high turnout and I'm fine with that I've got no problem with their explanation for why the election results had to be set aside but Gissel added something a category of cases where the prospect of a rerun election being fair were slight and that's the piece the board I'm not sure I'm reading the same thing you are but as I read it the board never really addresses the only thing I see they offer up close election but that really doesn't speak to the question of whether it can be fixed and have a fair election in the future and the conclusion that the violations here were sufficiently pervasive that we think they're going to the employers going to commit new unfair labor practices and I don't see anything else now that may be enough but it's not much and telling me that eight pages of detailed analysis I didn't find anything resembling what you just described well I I respectfully disagree your honor I can point me to the pages sure it's so you identify some of the pages yourself it's page you know starting on page 16 the board then goes on through page 19 with very detailed analysis examining the facts of this case explaining why the judge's conclusion was mistaken and explaining why in the board's expert judgment a rerun election is likely to be tainted here and why a bargaining order is warranted that's all the board needs to do under well-established precedent regarding gifts for starters we had four pages not eight well this is after already some analysis this is specifically responding to the judge but there's four pages before that as well who's about the remedy and this is where they're specifically talking about the board's judgment but a different remedy should be imposed in the ALJ had recommended and if you look at that part I mean I got to tell you I don't see a whole lot there well I respectfully disagree your honor but again I'd note that even if the court disagrees with the gifts of bargaining order again it's there's an alternative basis under this new framework which is controlling and would still justify enforcement of the board's order here and the board's adoption of the new framework does not depend on whether the court thinks that it gets a bargaining order so could you respond to mr. Baskin's argument that gissel itself set the boundaries of what the board could adopt as a remedial structure and why well just please react to that yeah thank you your honor I think I mean I disagree with with my opposing counsel I would urge the court to read the entire gissel opinion in detail I think it's very clear I would submit that what the court was doing there was affirming the board's discretionary adoption of a new practice so in that case there were three board orders that went up to the fourth circuit those three orders were applying the form of joy silk that was in place at the time so in those three cases the board had issued an order where it said this employer did not have a good faith that about the union's majority status it committed significant enough ULP's to set aside the elections that were issued issuing a bargaining order full stop the fourth circuit denied enforcement because it thought that authorization cards were not sufficient to show majority status the Supreme Court unequivocally reversed that position while the case was pending before the Supreme Court in a in a manner that the Supreme Court itself seemed to find surprising board counsel on behalf of the board changed position in the litigation itself and said that from now on going forward we're abandoning joy silk altogether we're essentially adopting this new standard which exclusively looks at whether a future rerun election is possible and I would submit in the opinion the Supreme Court is very clear that the only question it is answering it in fact explicitly reserved ruling on any other form of bargaining order it's only answering this new standard where you have a bargaining order based on a future election prospect and it says that it's affirming what the board did there is reasonable and it goes through these three categories mirroring the board's own proffered analysis including the category to that judge Clifton was discussing where you have a slight the possibility of a fair reintroduction is slight and it said that is entirely within the board's discretion it's affirming it and there's this third category where you have unfair labor practices so minor that they don't even impact the election so number one I think it's clear that the Supreme Court was you know affirming the board's discretionary exercise I don't find anything in that opinion suggesting that the Supreme Court was disapproving of joy silk I think it would have said that if it was because at the end of the day it affirmed this new approach that the board announced during litigation because it was a new approach it demanded the three cases to apply the new standard which no longer turned on good faith out and it otherwise fully affirmed all of the basic principles that go into the board's new standard here and I think is largely dispositive of this case because the central holding in Gissel is that Congress was clear that non-election proof of majority status is sufficient under section 9a and section 885 of the act to establish an enforceable bargaining obligation that is the heart of the new board's new framework in this case that you can have a bargaining order based on majority showing without having to go to a future election in fact one could argue that the Linden lumber standard which put all of the focus on a future election is really inconsistent with what the majority of Supreme Court said that that new approach was permissible with respect to the employer refusing to file an election petition but I would just urge the court to read both of those opinions in detail and I think they fully support the board's analysis here and what the board did was well within its discretion as the expert agency tasked with developing national labor policy there are a lot of issues in this case give you some extra time but I have a few questions on that first the board has the NLRA always expressly given the board rulemaking authority yes well there's expressed rulemaking authority in section 6 of the act in terms of formal rulemaking and in terms of the you know sort of gap-filling rulemaking that the Supreme Court referred to in Loper-Bright that is also established going all the way back to the inception of the act so we cited some cases in our 28-J response letter and those are just illustrative examples which in turn cite additional examples but it's very clear going all the way back to the start that the NLRA is one of the types of statutes that Loper-Bright is referring to where Congress wrote the statute wanting very broadly wanting to give discretion to the expert agency and since it's that kind of statute it's the standard of review as well established it's if the board exercises that discretion is it rational and is it consistent with the act so in the terms and when the board moved from the pre Joy Silk era to Joy Silk and then some iterations of Joy Silk to Linden Lumber and then some iterations of Linden Lumber to what it's now attempting to adopt and some experts have adopted and is subject to challenge here has there ever been rulemaking in any of these changes formal rulemaking there has not your honor and I think that response to Judge Clifton your question that yes Linden Lumber was in place for 50 years and the board's changes through adjudication but in Gissell and Linden Lumber the Supreme Court approved changes of a standard that had been in place for 30 to 40 years and had no issue with deferring to the board's discretionary change through adjudication and in fact in the board's entire history the board has only performed a handful of formal rulemaking so it's just well established that in the context of federal labor law courts have unanimously agreed that the board generally has the authority to announce rules through the adjudicatory process in Linden Lumber the DC Circuit seemed concerned with what would happen if the employer well excuse me the Supreme Court and there was some back-and-forth essentially between the circuit and the Supreme Court about what would happen if an employer filed a petition because of the DC Circuit's position was that the NLA actually requires the board to put the bonus of filing a petition on the employer correct and then part of the DC Circuit's rationale I think was that it would be more efficient essentially for the employer if it wanted to insist on an election for an employer to file a petition and my understanding of the Supreme Court and saying that NLRA doesn't actually require the board to require the employer to put on the petition noted that there could be the employer could file a petition that proposed a bargaining unit that differed from the one that the union demanded recognition for how under the new framework would the board handle such a discrepancy well so to the specific question of a discrepancy over the unit it would be very easily resolved because regardless of who filed a petition if there's a dispute over the bargaining unit that can be resolved through the representation case just as if the union so is it no longer true because that's the Supreme Court noted in Linden Lumber that if there was a demand for recognition for a particular unit then the employer filed an RM petition that proposed a different bargaining unit the board would dismiss the RM petition is that no longer true I don't think that's true your honor I hesitate only because it's not number one it's not presented in this case obviously and also this may be one of those areas I referred to where the board just needs to define some of these circumstances as they arise certainly the board hasn't issued any guidance and there's no clear answer in their existing board procedure I don't know off the top of my head your honor I'd be happy to provide that but I feel fairly confident in saying that it's not the case that an employer is somehow you know bound to a unit disagrees with in CEMEX itself the board went out of its way to make clear that even in an unfair labor practice proceeding if the employer does nothing an unfair labor practice charge is filed and a CEMEX it proceeding is initiated that in the unfair labor practice proceeding the employer would still have the defense that the unit is not appropriate and the board would adjudicate that in the unfair labor practice proceeding just as it normally does in a representation proceeding so certainly the intent of the board's framework is not to bind the employer in that way or to take away so it's not it would you say it's not clear under the current framework if if the union demands recognition for a particular unit an employer wants to go to an election the employer is not necessarily required to file the petition for the exact same unit that was demanded for I hesitate to give a definitive answer I'll follow up with the post-argument letter with the procedures would and then in Linden number I think in the DC circuit or possibly in the dissent to Linden number where I understand the dissent was saying that in fact the NLRA actually required the board to essentially adopt a framework similar to the one presented here the dissent was saying that the employer would have a third option which would be to announce that it would agree to a stipulated consent election essentially an expedited election if the union filed a petition do you know if the board anticipates allowing that you know sort of quasi third option in lieu of the employer finding the petition itself I think that's something else that the board would need to decide as it arises the board noted here that generally if an employer receives a request for recognition it should file an RM petition within two weeks but at the same time the board noted that there would be exceptions to that and extraordinary circumstances or unusual circumstances that could be presented to the board so again I don't know if the board has contemplated that or has an answer to that yet not the two weeks and the employer burning is not necessarily a breakaway rule under this that's correct your honor and also note that it's not really a burden and I think the board's reasoning may or may not differ to what the DC Circuit was saying and Linda lumber so what the board did here it's not there's no circumstance where an employer is required to file an RM petition and will be found to have you know be penalized for not doing so if an employer doesn't want to file an RM petition it doesn't need to do anything but it risks unfair labor practice liability if it simply does nothing and it's been proven that this was a majority Union so what the board is doing in its CEMEX framework is what I alluded to earlier the basic premise is if you have a majority Union through non-election evidence that is sufficient to establish a bargaining obligation and to harmonize that with the fact that the act does allow employers to file RM petitions and that elections fair and free elections are the preferred way of determining employee support the board in its framework created this carve-out essentially where it's saying you you can receive a request from a majority Union and you don't immediately have to bargain you may file an election petition and go to a fair and free election and you have that right as the employer under this framework but that right is forfeited if the employer then invalidates the election through unlawful or coercive conduct. I understand the Joy Silk framework essentially is that the employer could not insist on an election unless it had a good faith doubt and Linden Lumber essentially said the employer could insist an election regardless of whether it has a good faith doubt and that the CEMEX framework retains that part of the Linden Lumber standard which is that the employer can insist on an election regardless of whether it has a good faith doubt. Is that correct? That's correct the board has abandoned the good faith inquiry as it has in other areas for example in the withdrawal of recognition context so I think it's significant that the framework the board is asking the court to affirm here is actually in that respect you know much less forceful than the Joy Silk standard and its variance that this court affirms for decades and that the Supreme Court at least in principle very strongly came close to endorsing in Gissel. At least in this circuit in Trimford in other cases we approved the Joy Silk standard as consistent with the act. Yes in fact we cite a number of cases in the brief and those those aren't even an exhaustive sampling it was routinely the case in the circuit for decades that this court would affirm Joy Silk bargaining orders where you had a showing in majority status and no certified election had ever taken place and that's really the key question in this case. You're running over but I wanted to ask you about the make whole order. Assuming we disagreed with you that CEMEX had not waived the issue of whether it violates the Seventh Amendment why in your view does this not implicate the Seventh Amendment? I think the easiest answer your honor is that there's a plethora of binding precedent from the Supreme Court and lower courts that the board through its unfair labor practice proceedings adjudicates public rights rather than private rights. So the board's proceedings are not even within the ambit of Article 3 much less the Seventh Amendment right to a jury trial and so Jones and Laughlin the case we cite in our brief resolved that challenge in the very earliest years of the act where a party was arguing that the board's make whole relief required a jury trial and that it's ordered violated the Seventh Amendment and the Supreme Court unequivocally held that the Seventh Amendment has no application to the board's proceedings and that case was if not reaffirmed quoted and cited without disapproval in the recent Jharkhese opinion from the Supreme Court. Does the analysis turn on whether we look at the NLRA itself or on the type of remedy that the that the board is ordering and whether that sounds in in a legal case or an equitable case? How do we approach that type of question? I think the public rights exception is categorical it doesn't require a case specific inquiry into the remedy. I mean Jharkhese seems to really scale back the public rights exception so I you know I I don't know how much weight you would want to put into that side of it but as far as a threshold question this is I'm think concerned with does it implicate the Seventh Amendment or not and how do we answer that question before we get to a public rights exception? Sure I mean I guess it depends on the order you do the analysis to me the public rights exception actually proceeds first because you're outside of Article 3 altogether but we do have the alternative argument that even if you look at whether the Seventh Amendment is implicated based on a legal versus equitable inquiry the board's make whole relief is also equitable and that's also in Jones and Laughlin as an alternative rationale. The Supreme Court in Atlas Roofing explained this in detail explained what it was doing in Jones and Laughlin so you have first the public rights holding and secondly you have the holding that in that case it was back pay but because the make whole relief is incidental to the board's undisputedly equitable cease and desist and reinstatement orders it's the make whole relief is effectuating that equitable remedy that it is itself equitable in addition to the cause of action here being anti-union discrimination that that's totally unknown to the common law so even if the court were to do the the two-step analysis under the Seventh Amendment this is also just an equitable remedy under binding precedent and as to the public rights exception I would just note that whatever the Supreme Court had in mind with respect to the public rights exception writ large in Jharkhese itself it actually was citing Jones and Laughlin and there's also the Agostini principle that you know lower courts are not meant to assume that the Supreme Court has overruled its precedent by implication and certainly there's no Supreme Court decision suggesting that Jones and Laughlin was a which is a very foundational administrative law case that that has somehow been called into question by implication so that would be the easiest way of resolving the Seventh Amendment I'd also just note in passing that as we cite at the end of our brief there are related cases pending in the circuit where parties have been challenging but the Thrive remedy so just to bring that to the courts aware and I apologize if you did address this in your briefing already but as any of our circuits sister circuits addressed the legality of the remedy and specifically not with respect to the Seventh Amendment issue but whether it's within the board statutory authority there's no opinion yet doing that your honor there's a case in this circuit Macy's which may be the furthest along that I'm aware of in Thrive itself as we noted in our 28-day letter the Fifth Circuit denied enforcement in that case but it was because they found substantial evidence to not support the end for labor practice so they really have no of the underlying claim not on them right so they had no real substantive analysis or cause to address the remedy so that has not been usually in presenting the same challenge to the board authority to issue this remedy other cases I'm sorry that Macy's case as you said is already pending in this circuit it involves a challenge to Thrive I'm not sure that it you know assuming the issues were properly raised here that it includes all the same issues the court the panel and Macy's did request supplemental briefing on Jharkhese in the Seventh Amendment I think the agency's position is that it's not properly presented there because the the employer had not raised it but I don't know if the panel on that case intends to and that case has already been submitted it's been argued and there was supplemental briefing and I see I'm well over time so if the court doesn't have any further questions don't suppose the general counsel is going to pay you extra for it but we appreciate the contribution thank you very much okay thank you thank you I'm sure that's an unfair labor practice making you work overtime that's the professional life I'm going to start with the application issue that you had been asking about in practice throughout the regions and I have a practice that takes me to at least eight to ten regions a year what they've been doing in practice is if an RM is filed it does not have to follow precisely the scripture of the unit definition that was put forth by the Union as part of the demand for recognition and when there are competing RM's and RC's they put one into abeyance and allow it to fully get processed and they have the other one as the backstop in case one of the two parties decides to withdraw their petition either side can still get a resolution on the issue of representation because both petitions are there impending both the RM and the RD decisions that you can refer to in a 2018 there they don't wind up going to decision right it doesn't you know the majority of cases tip anyway even when both an RM and an RC is simultaneously pending so it's very hard to track precisely where they are I'm not aware of any board decisions on it there might be some RD decisions but I have not seen those yet but in practice the employer is getting the opportunity to raise the question that they don't like that unit or that they have questions about that unit determination or what that unit would look like I think that overall though important part here on this case is it can be affirmed on the Gissel order and you don't have to get into that additional framework if you don't want to but I think what the board is trying to do in that some X order is to address not just remedying the unfair practice but helping to ease the chill that comes from when the employer tells employees you these are the healthy employees in an illegal way they're still allowed legal speech of course and there might be a loss of majority support based on legal speech but if it's illegal speech or illegal actions that ensuring that employees are not forever damaged by that because what happens in these cases you can take this case as a solid example the petition was filed in 2018 these employees have been waiting for over six years to get resolution as to whether or not they have the union they had majority support it was destroyed by the actions of the employer and now we've been engaged in round after round of litigation in different forums and that's how the system gets tested for sure but in the end but what's happening is that the employees are not receiving the benefits of being unionized and they can never make that up they will never get back the wage increases that they would have had had they been engaged in good fit had the employer been engaged in good negotiations all the way through it's just not something that they will get to I get that but but the premise is it's the workers that are allowed to figure out if they want representation there was an election here and the worker majority albeit slim voted against the representation now I understand all the arguments as to why that was tainted but it makes it hard for me to simply presume that the result would have been different and that the employees who favored the Union were right and the employees who voted against the Union were wrong and they lost a wave of benefits the legal system isn't set up to presume that one side was right and the other side was wrong and so the standard requires demonstration that a rerun election because an election is the preferred way that the prospects of a fair election would be slight and I have posed several times the question and I haven't seen anything or heard anything that suggests the board had a solid basis for deciding that it was right and the ALJ was wrong but the board has to explain what it's doing and it explained what it's doing by starting with an incorrect statement as to what the ALJ had found so you got to understand my skepticism I understand your skepticism but I think that overall what we see under the GIFL 2 analysis is the board and then the courts in most circuits not in this circuit but in most circuits then guessing what would have happened and trying also to make that what would the future impact be determination and what the board has ultimately decided here is they know what that future impact is unless it's a minimal ULP the impact is always the same the impact is that you have chilled the section 7 rights of employees and the best way to effectuate the act and ensure that employees have those section 7 rights it's to start from the presumption that the employer should not benefit from its violation of the law if the employer violates the law in the process this is the implication unless it's such a minor violation that we're not going to get into it that's consistent with GIFL that's GIFL 3 right the third type where a bargaining order does an issue but what we say instead here is that the board has made a determination that the employers unfair act always result or nearly always result in an impediment to a future election being better than the card majority that previously existed and that's a concern I have here is that the board explains its adoption of the new framework by making explicit reference to the fact the board hadn't been particularly successful before courts in trying to enforce bargaining orders that when called upon to justify in front of a court albeit with the difficult standard because there's deference given to administrative agency the board has frequently struck out and so I explained so we need to change the rules but I'm more likely to think the courts are probably coming at it correctly why should I presume that the fact that the that this picture is so tough the board strikes out a lot that we should make this picture leave and put another picture in put in a new framework where the board thinks it will be more successful I think that's not a fair representation of the existing case law there is a circuit split on what else we look at GIFL 2 doesn't require the employer the court to look at the passage of time whether or not the employer representatives have left whether or not there's turnover but the courts have added some of the courts have added that standard in which has created an additional layer of analysis that was never intended by the GIFL decision itself. This court is not there. This court has a strong wall of authority but the remedy chosen by the board as long as it's not an abusive discretion is the appropriate one and does not go behind that even on a GIFL order. I will be brief but I'd like to pick up we might work you over so yeah charge your extra time I said three minutes okay three well I like to pick up where counsel left off because the notion that where the change circumstance doctrine comes from is the order in GIFL that there must be reason to believe that the election cannot be fairly rerun when in the present and that's why I'm not saying that you need to deal with the wall of the change circumstances doctrine but you do need and the board was required to analyze the fact that well we were worried about chilling people and they're waiting around well half more than half of the group has left they're not they have no the people who are there now have no knowledge of anything that happened before. 4G the vice president who you're accusing the board is accusing things he's long gone some of the supervisors are there and there's every reason to think they would follow instructions say hey you know we don't particularly enjoy litigating for years over these things let's do it right this time so all of that is is present but I really want to pick up on something that was said a couple of situations about the administrative law judge and going in a different direction you know universal camera another very seminal decision addresses this point and and says that evidence supporting a conclusion is less substantial when an impartial experienced examiner who has observed the witnesses and live with the case has drawn conclusions different from the boards and in another circuit we had that issue coming up and of course we had it in this circuit with the mechanical overturn the the board because they did not follow the recommendation or the finding holding of the administrative law judge so I think the very fact that the board has misstated what the AOJ held in the first place and then did not follow what he said when and it changed some of his rulings in order to make the unfair labor practices seem worse than they actually were at all contributes to the finding of the simple opportunity for parties to file objections because they may want the board to reach different findings of fact and conclusions a lot I mean there were the whole point of the board review of the AOJ is recommended decision is that the parties get to file objections and ask the board to reach different findings of fact you are reviewing the board's decision but that's exactly the issue that came up is we were asked to do supplemental briefing in that case about what is universal camera mean and the conclusion wound up this is happens to be the new concepts for living case on the Third Circuit the opinion came out said it means something it means what universal camera says it means you have less weight it's our increased burden on the board to justify itself which the board did not do here and so the very finding of under the old the existing gets old order requirement with all difference to the rest of the world very much concerned about this new standard under the existing standard there should be no finding of a bargaining order in this case against this company I have before you run out of time I would like you to address some of the other issues claims did you raise in the case in particular your challenge to the removal authorities for the AOJ can you explain why you mean all the requirements for constitutional standing to raise that claim in particular causation and redress ability of harm yes so so where's the harm the harm is in our case it's already satisfied you know the administrative lodge that's really got that one part right that he made findings adverse to the company and he's sitting in an unconstitutional capacity so a company like CEMEX in this situation is distinguished between appointments that are improper and removal that's improper and there's no contention here that the AOJ was appointed improperly is there I've seen arguments distinguishing between that semantics he's there and his exist continued existence it's an inability to remove him that is what's rendered him unconstitutional and I could see people saying that's well he's appointed improperly to or he's appointed properly to an improper position I read that to linguists I can't go beyond that the point is he's unconstitutionally there under the Jercasey holding which the Supreme Court left standing now the other part of Jercasey goes to the other issue that came up in the other rebuttal and I think what we would say to that is that while there does appear to be a avoiding constitutional issues where you can look at the statutory question and and under the statute the law is clear now under a clearer under the Jercasey decision that the that the types of damages that are being sought by the board in the thrive remedy are the types that the National Labor Relations Act did not authorize the board to award but why I didn't want to you about this it's a make whole order and it's to bring a person who is it has allegedly been suffered an injury based on the unfair labor practices making them whole that just sounds equitable so what why why is it compensatory in your view because money damages and this is in the words of Jercasey our classic example of non-equitable of legal relief they have gone beyond in fact all the statute says for the National Labor Relations Act is affirmative action including back pay it doesn't say including costs of job searches or attorney's fees or various other consequential things those are damages and if the Congress knew how to say more in fact that's what the Supreme Court said at Burke they're talking about title 7 and they said title 7 was based on National Labor Relations Act and under both they should not be allowed to get more than back pay until they decided to change the Jercasey you know securities fraud and the court said that's a very traditional common law type of case for fraud and what's the analog to the national liberal relations act you know the is there a common law analog to enforcement actions for unfair labor practices well title 7 is not that different that's what the court itself thought was but the NLRA though well if you're referring to that I mean the public rights aspect is really hanging by a thread I'm more interested in whether this even implicates the 7th amendment or whether this is in a line of cases where it's not about common law principles but the board here is applying an equitable remedy in an area that does not usually come up in civil trials that that's what I'm concerned with yes it is and it does implicate the 7th amendment though you don't need to reach that because you can find that it violates the board's statute which is they wanted to include all these extras whether you call them make whole equitable legal you don't get so hung up on that kind of definition and you can reach the common-sense result which is they were designed to work back pay well they just do that and stick to that I did want to and just one last thing which is the rulemaking questions that that came up because under the law that they are required to do rulemaking specifically because the facts are not in this case to impose this new standard and and we cited the case of Ford versus FTC that says that an agency is not creating a new standard in the form of adjudication because the facts underlying the new standard did not happen therefore must proceed to make a change in the law by using rules of widespread application which the board has been doing for example in the decertification context they went to all the trouble to do a rulemaking there they did it in the joint employer issue and even what they used to do used to in the previous administration or even a few years ago they would at least invite amicus priest say they were considering some off-the-wall will change through adjudication they didn't do that here under one of the most off-the-wall technical off-the-wall problems in the eyes of the beholder yes I guess so but I will tell you that in the eyes of the regulated community many of whom are listening to this today there is great concern about the hopeless muddle that has been created by this thing with no without going through the formalities of rulemaking the formalities being notice public notice and comment to which they're entitled and some assurance that they have considered all of the difficulties and imponderables that now are coming to light that no one knows the answer until we see the next NLRB decision general counsel can give guidance but she didn't decide this issue she didn't even ask for it so with that last comment I think we would just ask that you rule in favor of the petitioner and deny enforcement of the board's order thank you thank you for your helpful arguments this matter is to me
judges: CLIFTON, SUNG, SANCHEZ